We'll move to our second argument of the morning, Appeal Number 222757, Bowe Marvin v. David Holcomb. Mr. Barnes, whenever you're ready. Good morning. Robert Barnes, on behalf of the appellant and the plaintiff, Your Honor, may it please the court. This case concerns a 21-year-old boy who answered the door at his father's farmhouse. Three officers were outside. As the officers knew, he was constitutionally entitled, as this court made clear in Berkowitz, to not answer the door, to shut the door, to be not cooperative, to not answer questions, to be sarcastic, to be any of those things. He had no time to threaten the officers or anything like that. They admitted that. He didn't say anything threatening, didn't commit any felony in front of them or anything else. At one point, two of the officers say they just got the idea simultaneously in their head to grab him, throw him out of the house, in which case another officer tackles him, tazes him, stuns him, and then they get on top of him and start beating him with their closed fist, according to their own testament. According to the court below, that's completely reasonable. Indeed, the court below determined that if an arrest is completely lawless, that that is completely reasonable and has nothing to do with an excessive force test. Mr. Barnes, I don't know about that. I don't see any language in the district court opinion suggesting that lawless arrests are OK. What do you have in mind? Yes, Your Honor. What happened is he interpreted that this court in Bukovic said that the fact that an arrest may be lawful doesn't make it reasonable if the force is excessive. The district court interpreted that to mean that even if an arrest is lawless, the arrest is still reasonable if the force was not excessive. He flipped it on its head, but what this court actually said at 621 F 3rd... Why does that matter here, though? Because you're not challenging the lawfulness of the arrest. You've made an excessive force, an unlawful entry, and an excessive force. So even if you're right that the district court misspoke about the lawfulness of the arrest, that's not the claim before the court. We believe it is, Your Honor. In fact, the court claim was that any use of force... You're not challenging. This is not a false arrest. There was no claim for false arrest or not having probable cause to arrest him. The focus was the excessive force used and the unlawful entry into the home. So why would that matter even if you're correct, even if your premise is correct? Yes, Your Honor, because any use of force is excessive if it's not a lawful arrest. So for example... Even if it's a lawful arrest, you can't use excessive force. There was nothing that I saw in the record where you tied anything to the arrest itself. Yes, Your Honor. The allegation is that any use of force is excessive if the arrest isn't lawful. And that is exactly what this court said in a case cited by the district court, the one the district court got confused on. And this is Carlson v. Bukovic, 621 F. 3rd, 610, 622 Note 19, 7th Circuit, 2010, that an unlawful arrest, a seizure without probable cause, is itself unreasonable. The court earlier in its summary judgment decision says exactly the opposite. It says it's not per se unreasonable to have to What he got confused was the fact that an arrest is lawful doesn't make it reasonable if the force is excessive. But all use of force is excessive if the arrest isn't lawful. And this relates to Indiana law and the state court claims brought of battery and excessive force. Because Indiana statutes, to cite for the record, Indiana Code 35-4133B, and relevant here, 35-413-2I, say that a force is only justified against a claim of excessive force by a police officer if it's pursuant to a lawful arrest. Mr. Barnes, I'm confused here. You got to step back a little bit, okay? Yes, Your Honor. I thought that the claim that was made, I think very close to what Judge St. into this home. Am I even right about that? Absolutely, you're right about that. Okay. Now, if the entry into the home was unlawful, the entry into the home is what was done by the police officers to affect the arrest. Is that correct? Yes, Your Honor. Okay. And in the course of affecting the arrest is when the force was used. Yes, Your Honor. Is that right? Yes, Your Honor. Okay. And there's a separate claim that the amount of force that was used to affect the arrest, the tasing, the punching, what you recounted a few minutes ago, that that was excessive under Fourth Amendment standards. Is that correct? Yes, Your Honor. The only is that there's two different excessive force claims as I read. Okay, go ahead. One is that any use of force was excessive in executing any arrest from inside the home when no exigent circumstances were present. So, that's excessive force by itself. Any use of force to execute an unlawful arrest is excessive. So, basically, your argument is if someone is arrested unlawfully, they have a per se excessive force claim. That's precisely. To recover damages. Yes, Your Honor. But your unlawfulness of the arrest is not based on a probable cause argument. It's based on stepping into the home. That's correct, Your Honor. So, you agree there was probable cause to arrest here. I don't concede that there was on the factual record here, there was probable cause to arrest. But it doesn't. You don't seem to be disputing that in your briefing. The dispute is focused on the unlawful. It doesn't matter if there was probable cause or not. No, I think is right. She, what she's saying is that you're arguing that there's a fourth amendment infringement at the threshold of the home, at the door. Yes, Your Honor. Okay. But you're not arguing that they lacked probable cause and the reason that I didn't, I didn't see that argument in your brief makes good sense to me. There was a 911 call that he threw a chair at his mother, hit her in the head, and cut her mouth open. And she was bleeding when the police officers. So, of course, there's. She told the police officers that. So, that's, that's why you didn't argue that or at least that, I mean, I'm, I'm willing to give you all the credit for that. You can't make that argument. Well, I would disagree there because two things. One, the call was not about a request for battery. It was a wellness check call. Well, hold on, hold on. I mean, when they show up, they see the mother outside, right? She's bleeding from the mouth. And she said she's fine. She doesn't want him arrested. That she just wants a wellness check. Well, they're not, I mean, are they constitutionally compelled to listen to her? No, we weren't. He's going to take his life. He has a box cutter or he carries a box cutter with him. I mean, this is an extremely delicate position that officers find themselves in. And she told him he threw a chair at her, which is what busted her lip open. And that's why they decided to violate the law and the lower court let him get away with it. And the only question is whether this court lets him get away with it. Because let's take what you're saying is correct. That statement's a little bit dramatic. Mr. Barnes. Is it? Because if they had probable cause to believe that a battery had committed, which is exactly what they had here based on what his mom said, then they certainly have a right to arrest him. But not to yank him out of the house. But he's a jury trial on that issue. Only some of the issues went to different things. Only one part of the issue went to jury trial. It was what you're saying is they go there. They know they want to arrest him according to the court's understanding. They know they legally can't arrest him as long as he's inside the house. So they yank him out. They lie about it in their depositions. They initially say, oh, he was outside the house when we arrested him. Photographs prove him wrong. And then what the court says is no use of force in that capacity was excessive force. Not even the force used to remove him from the house or the subsequent. Let me ask you this question. Did the Fourth Amendment in your view compel them in after talking to the mother to return to their cars and drive back to the police station? No, it just compelled them to not remove him from his home without exigent circumstances. But that went to the jury, as Judge Kirsch just pointed out. No, it didn't. The unlawful entry. Yes, it did. I mean, part of the unlawful entry went to the jury and then the jury wasn't given the Berkowitz instruction on a plain statement of law. That was the whole essence of the case and the essence of the defense. Let's talk about that jury instruction. In your reply, you essentially say that it's not, not essentially, you do say it's not necessarily inaccurate, which is a little bit different from what you argued in your original brief. What about instruction number nine are you claiming was the error? The failure to instruct the jury that you are entitled and you have an expectation of privacy, even when you open the door in response to a police officer knocking on the door. So the Berkowitz question. Now, exactly. The court gave the same jury instruction nine in its preliminary instructions and there was no objection. Why haven't you waived or forfeited this objection? I don't see that as waiver under these circumstances. How? Because the court, there was a jury instruction conference, the court proposed, I'll refer to it as jury instruction nine for the case. You didn't object. The court gave that instruction and now at the end of the case, you want to change that instruction. The trial counsel objected prior to it going to the jury. But not at the preliminary stage. So what's the court supposed to do? Say, oops, I was wrong in what I instructed you before trial. Let me give you a different instruction. It's commonplace for clarifications to be issued at the end of the case. What's the facts of the actual trial? It is not commonplace to change an instruction on the law from what you gave them in advance of the trial. I don't see it as a change. I see it as an addition. In other words, it's just making clear that the jury knows that you do, in fact, have a reasonable expectation of privacy, even though you open the door. So why would that, even if you're right, and they should have, the court should have given a why would it matter here when the whole theory was based on exigent circumstances, not based on whether or not stepping in and stepping over the doorway, there was a reasonable expectation of privacy. The jury could reasonably conclude because of the absence of a Berkowitz instruction that him opening the door waived his expectation of privacy. But if there are exigent circumstances, the expectation of privacy doesn't matter. There were no exigent circumstances. But that's what they argued to the jury. That's my point. I don't know why their theory, and I read the closing argument, was all based on the exigent circumstances here. That's an exception under the Fourth Amendment. So I don't understand why, even if the reasonable expectation of privacy instruction should have looked different, why that matters here when the theory was exigent circumstances. Because we don't know what the jury determined. We don't know if part of what they determined wasn't that there was no exigent circumstances for which the evidence was very weak, but was instead, oh, they concluded that he opened the door, so he had no expectation of privacy. That was the key to the Berkowitz instruction. And that's useful for future cases moving forward, independent of this case, is for courts to have clarity on that aspect. The last aspect, before I'll reserve the remainder of my time, the court also got confused on when personal involvement is required. The court concluded personal involvement effectively required direct participation unless they were a supervisor. But that is not what this court has established. This court has established in a range of cases going all the way back to Crowder in 1982, that if you turn a blind eye, if you acquiesce, if you know about it, if you consent to it, if you join in on it, that direct participation is not required under Gossmeier. All that's required is direct involvement at some level. Here you had two officers pull him out, a third officer immediately tackle him, and another officer then get involved in stunning him and beating him. These are joint involved participants. So at a minimum, the court should clarify that it's not a case you have to directly throw the punch or be the supervisor of the person throwing the punch. If you're physically present and you do engage in conduct that can be interpreted by a jury to be acquiescing in it, then that constitutes personal involvement under this court's precedence dating back to 1982. That sounds like a failure to intervene claim. That's how the courts have defined it. It's kind of like aiding and abetting. It's a various form of joint participation. So it doesn't require a separate allegation historically. Personal involvement is just you're there, you know about it, you consent, you acquiesce, you turn a blind eye. Something that shows beyond, oh that one officer was down the street 10 blocks and you want to blame him for something some officer did. That's the scenario here and that also warrants clarification. I'll reserve the rest of my time. Thank you. Yeah, very well. Mr. Agostino, good morning. Good morning, Your Honor. May it please the court. I think the starting point for this case is to look at what the complaint is. There was three legal theories that the plaintiff was pursuing this case on. The first was the warrantless entry, the second was the excessive force, and then the third was a tag-along claim under state law for the excessive force under the allegation of failure to intervene. And so looking at the theories that were in fact asserted in the complaint and how the court processed those claims on summary judgment, I think the court correctly ruled that the plaintiff did not come forward with sufficient evidence on the excessive force because there was resistance in the arrest attempt. The force was the minimum necessary to be used under those circumstances to get control over the claimant. And it's not enough that the claimant in this case rely on what they alleged in the complaint. At summary judgment, they were required to come forward either with affidavits, deposition testimony, something under oath, some form of admissible evidence to show that there was a genuination of fact. They did not do that. In fact, even on appeal, it seems that the appellant is relying on allegations to try and say there was a fact issue on the force used rather than point to specific deposition testimony or some form of affidavit. So there was nothing to show that there was a genuine issue of material fact with respect to use of excessive force. Then when you move from there to the entry, the court said that there's a question of fact here. Was he in the house or out of the house and did not really deal with the exigent circumstances in the summary judgment process. But that did go to trial. Was your theory at trial exigent circumstances? Yes, it was. That's what it seemed to be. Yes, it was. And the exigent circumstances, I think, were very clear, starting with the 911 call, getting to the scene, finding that the mother had, in fact, been injured by her own son. She's bleeding. She didn't want to cooperate initially, then finally did give the facts. They get to the house. They're made aware that he's got a box cutter. He's in the house. His dad is in the house as well. So they've got a young person with a box cutter who may be suicidal, who may be thinking that maybe he's going to injure his dad. The officers were looking at what they did and was it reasonable from their perspective at the time that they did it, not from hindsight. So looking at what the officers are dealing with when they get to the house. Now they've got someone that's injured his mom in the house with another person in there. That is exigent circumstances. So is the way you presented that argument at trial that even if there was a crossing of the threshold of the door, that that occurred in the exigencies of these circumstances that the officers faced and therefore there's no Fourth Amendment violation? That's correct, Your Honor. It does seem, and looking back at the district, it does seem precisely where people were situated and where he was within the doorway area quite disputed. They may well have reached in and that's why you advanced it in terms of exigency. I think that was the better argument. There was confusion and dispute in the evidence of exactly where he was. Was his arm outside past the threshold and outside? That seemed to be hyper-technical compared to having an argument that's based on the facts that supported exigent circumstances. That was the stronger argument. And they reached through, grabbed him, and then the tussle began, but that was after the box cutter came out of the back pocket. That's right. The box cutter coming out of the back pocket provided a distraction for the plaintiff. He was distracted and that was at the moment that the two officers made a split-second decision to take control of the situation, which was the right thing to do. And I think on the jury instructions, I think the court, as already been pointed out, did have a discussion about whether this was waived, but the court also gave three other instructions that very clearly told the jury. Instruction number two, that was the issue instruction, said that the issue is about unreasonable entry into the home. Number six, clearly told the jury that entry into the home without a warrant is presumed unreasonable unless you have consent or exigent circumstances. And number eight, addressed what exigent circumstances are. But the jury was well instructed that going into the house without a warrant is presumed to be unreasonable. And then the jury was told you have to look at the exigent circumstances as a justification for that. And that's what happened. And the substance of instruction number nine seems to align with our prior decision in sparing, correct? I'm not at this moment particularly familiar with that case. I think there's a question of whether sparing is fully aligned with where the Supreme Court is at on the Fourth Amendment, but I think the instruction aligns with where our court is at. It is, and it also tracks very much, I think, with where the So, which I think may be derived from that. So I think at trial, it's not a misstatement of the law. It didn't cause confusion. And when you look at what the theory of the case was, and as it was presented to the jury and what was emphasized, there was more than enough evidence presented to support the exigent circumstances, exception to the Amendment claim. And so, at the end of the day, the claimant got their day on court on the issue where there was a fact issue, the jury did not believe the claim, sided with the defense, and for those reasons, I think, unless there's other questions, I believe the trial court should be a bond. Thank you. Okay, very well. Thank you. Mr. Barnes. Yeah, go ahead. You can take a minute. We'll round it up. On the question of evidence for the excessive force claim, the summary judgment motion filed, that was cited in the appendix, is all to Bo Marvin's actual deposition testimony. I'm sorry, could you repeat that? The opposition was based on Bo Marvin's deposition testimony, so it wasn't just based on the pleadings. And what was detailed, even the police officers acknowledged when they started to execute the arrest, they didn't tell him he was under arrest. They hadn't asked him any questions concerning his arrest. The only potential weapon on him, the bow cutter, had been removed from him and was in his father's possession. And they admit he never threatened them. The only crime they allege is a misdemeanor battery, which was ultimately dismissed later on. No charges were ultimately brought to trial in the case. And in that circumstance, how is what he did, how does that justify a jury, a court finding as a matter of law that the force used was reasonable? Because you're talking about being tased, being stunned, being tackled, being beaten with closed fists. These were facts that, as this court warned back in 2005, Abdullahi versus City of Madison, 423 F3rd 763 at 773, 2005. Summary judgment should, quote, be sparingly used in excessive force cases because there's always going to be factual disputes. But here, even the facts not in dispute give substantial reason for this to have reached a jury on those questions. Thank you, Your Honor. Okay. Thanks to you, Mr. Barnes, Mr. Agostino. We'll take the appeal under advisement.